UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD COUSIN, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15751** |
| **ST. TAMMANY PARISH, ET AL** | **SECTION "N" (4)** |

### ORDER

Before the Court is a **Motion to Appoint Counsel (R. Doc. 19)** filed by the Plaintiff, Edward Cousin, Jr. On March 6, 2017, the Plaintiff certified his attempts to obtain Counsel per the Court's order. R. Doc. 21. For the following reasons, the Motion to Appoint Counsel is **DENIED.**

### I. Background

On October 12, 2016, the plaintiff, Edward Cousin, Jr. ("Cousin"), filed this pro se and in forma pauperis complaint against St. Tammany Parish Government, Louisiana State, Patricia Brister in her official capacity as President of St. Tammany Parish, Sheriff Randy Smith, Detective David McNeese, and six unidentified officers of the St. Tammany Parish Sheriff's Office. Cousin is currently housed at the B.B. (Sixty) Rayburn Correctional Center in Angie, Louisiana.

In his complaint, Cousin alleges that on January 12, 2015 he was on his way home when he came to a complete stop at a stop sign on the corner of Brookter and Foxbrier Streets. R. Doc. 1, p. 5. At that time, he noticed a Sheriff's car approaching at a high rate of speed, but that the sheriff's car was blocked by a burgundy vehicle. Id. He then stopped at Hollowrock Court to pick-up his stepdaughter to take her to work. Id. At that point, the Sheriff's vehicle stopped several feet behind him and began flashing its lights. Id. He states that he then exited the vehicle. Id. The sheriffs then began to approach with guns drawn, demanding to know where the guns and drugs were. Id. Before he could react, Cousin states that he was thrown against the car, and the officer wanted to know why he had run the stop sign. Id. Cousin denied running the stop sign. He was

then allegedly thrown to the ground and handcuffed. Id. The officers then allegedly began beating Cousin as he yelled out that he was diabetic, disabled, and had high blood pressure and a bad heart. Id. He states that he was kicked, punched, and hit with a billy club on his back right thigh. Id. In total, he alleges that six officers were beating him.

After the incident, Cousin alleges that he was brought to the emergency room at Ocshner Hospital. Id. There, his heart doctor met them and told the sheriff officers that they could have killed him. Id. Cousin was then allegedly handcuffed to the hospital bed while officers refused to allow his family to visit. Id. Officers also allegedly made Cousin sign a ticket. Id. The Officers also allegedly asked the nurse on duty to inform them when Cousin was released. Id.

After being released, Cousin started receiving threatening phone calls two weeks later from Detective McNeese allegedly demanding that Cousin turn himself in. Id. After speaking with his lawyer, Cousin turned himself in on January 28, 2015. Id. At this time, Cousin states that he still has trouble with his arm and eye as a result of the incident as well as a considerable amount of emotional distress and mental anguish. Id. at p. 6.

Cousin has stated claims for intentional bodily injury, professional negligence, general negligence, wanton disrespect for the rights of others, and mental anguish and emotional distress. Id. Cousin seeks compensation for his injuries and a reasonable amount of damages for a total of $1.5 million. Id. at p. 7.

At this time, Cousin has filed a motion to appoint Counsel. R. Doc. 19. On February 3, 2017, the Court ordered Cousin to certify in writing the steps taken to secure counsel. R. Doc. 20. On March 6, 2017, the Cousin filed a response, explaining that he has attempted to secure counsel but has been unsuccessful. R. Doc. 21. Cousin explained that: (i) it is hard to contact attorney's from inside the prison; (ii) he has contacted a number of lawyers but has not found one that deals

with both civil and criminal matters; and (iii) most attorneys do want to take his case because he is suing St. Tammany Parish. *Id.* at p. 1.

## II. Legal Standard

There is neither "a constitutional right [nor] an automatic right to appointed counsel in a civil case" *Margin v. Soc. Sec. Admin*, No. 08-4605, 2009 WL 3673025, at *1 (E.D. La. Oct. 28, 2009) (citing *Caston v. Sears, Roebuck, & Co.*, 556 F.2d 1305, 1309 (5th Cir. 1977)). However, "'[a] federal court has discretion to appoint counsel if doing so would advance the proper administration of justice.'" *Gilbert v. French*, 364 F. App'x 76, 84 (5th Cir. 2010) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir.1982)). In particular, 28 U.S.C. § 1915(e)(1) provides that "[t]he Court may request an attorney to represent any person unable to afford counsel."

Appointment of counsel for civil litigants has been limited to "exceptional circumstances." *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) (citing *Ulmer*, 691 F.2d at 212). While the Fifth Circuit has not articulated a complete definition of exceptional circumstances, the Fifth Circuit has listed certain factors to consider in determining if the circumstances warrant the appointment of counsel. *Id.* Those factors are:

> 1. the type and complexity of the case; 2. the petitioner's ability to present and investigate the case; 3. the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross examination; and 4. the likelihood that appointment will benefit the petitioner, the court, and the defendants by shortening the trial and assisting in just determination.

*Id.* (quoting *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992)).  The Court may weigh these factors as it sees fit depending on the facts of the case. *Id.* at 801 ("[T]he district court was free to weigh other factors more heavily in finding that exceptional circumstances existed.") The Court may also consider the extent of the litigant's attempt to secure private counsel. *Id.* (citing *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989)).

### III.  Analysis

Cousin has filed a motion for this Court to appoint counsel to represent him. R. Doc. 19. The Court conducted a thorough review of the nature of the plaintiff's claims, and determined that this case is not appropriate for the appointment of counsel. *Akasike v. Fitzpatrick,* 26 F.3d 510, 512 (5th Cir.1994) (counsel should only be appointed under exceptional circumstances in a civil rights case); *Wendell v. Asher,* 162 F.3d 887 (5th Cir.1998) (same); *Robbins v. Maggio,* 750 F.2d 405, 412 (5th Cir.1985); *Ulmer v. Chancellor,* 691 F.2d 209, 212–13 (5th Cir.1982); *Hardwick v. Ault,* 517 F.2d 295, 298 (5th Cir.1975). The Court does not find this case to be particularly complex and finds that Cousin is capable of presenting his case adequately. The issues have been identified and require no particular skill to present. Cousins has proven his ability to convey his arguments in his pleadings and in the prior conferences with the Court. For these reasons, the court need not and will not appoint counsel for Cousins.

### IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Appoint Counsel (R. Doc. 19)** is **DENIED.**

New Orleans, Louisiana, this 10th day of March 2017.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**