# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD COUSIN, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15751** |
| **ST. TAMMANY PARISH, ET AL** | **SECTION "N" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and(C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.

On November 28, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by telephone conference call.[2]

## I.    Factual Summary

On October 12, 2016, the plaintiff, Edward Cousin, Jr. ("Cousin"), filed this *pro se* and *in forma pauperis* complaint against the St. Tammany Parish Government, Louisiana State, Patricia Brister in her official capacity as President of St. Tammany Parish, Sheriff Randy Smith, Detective David McNeese, and six unidentified officers of the St. Tammany Parish Sheriff's Office. Cousin is currently housed at the B.B. (Sixty) Rayburn Correctional Center in Angie, Louisiana.

In his complaint, Cousin alleges that on January 12, 2015 he was on his way home when he came to a complete stop at a stop sign on the corner of Brookter and Foxbrier Streets. R. Doc. 1, p. 5. At that time, he noticed a Sheriff's car approaching at a high rate of speed, but that the

---

[1]766 F.2d 179 (5th Cir. 1985).

[2]R. Doc. No. 15.  The plaintiff was sworn prior to testifying.

sheriff's car was blocked by a burgundy vehicle. *Id.* He then stopped at Hollowrock Court to pick-up his stepdaughter to take her to work. *Id.* At that point, the Sheriff's vehicle stopped several feet behind him and began flashing its lights. *Id.* He states that he then exited the vehicle. *Id.* The sheriffs then began to approach with guns drawn, demanding to know where the guns and drugs were. *Id.* Before he could react, Cousin states that he was thrown against the car, and the officer wanted to know why he had run the stop sign. *Id.* Cousin denied running the stop sign. He was then allegedly thrown to the ground and handcuffed. *Id.* The officers then allegedly began beating Cousin as he yelled out that he was diabetic, disabled, and had high blood pressure and a bad heart. *Id.* He states that he was kicked, punched, and hit with a billy club on his back right thigh. *Id.* In total, he alleges that six officers were beating him.

After the incident, Cousin alleges that he was brought to the emergency room at Ochsner Hospital. *Id.* There, his heart doctor met them and told the sheriff officers that they could have killed him. *Id.* Cousin was then allegedly handcuffed to the hospital bed while officers refused to allow his family to visit. *Id.* Officers also allegedly made Cousin sign a ticket. *Id.* The Officers also allegedly asked the nurse on duty to inform them when Cousin was released. *Id.*

After being released, Cousin started receiving threatening phone calls two weeks later from Detective McNeese allegedly demanding that Cousin turn himself in. *Id.* After speaking with his lawyer, Cousin turned himself in on January 28, 2015. *Id.* At this time, Cousin states that he still has trouble with his arm and eye as a result of the incident as well as a considerable amount of emotional distress and mental anguish. *Id.* at p. 6.

Cousin has stated claims for intentional bodily injury, professional negligence, general negligence, wanton disrespect for the rights of others, and mental anguish and emotional distress.

*Id.* Cousin seeks compensation for his injuries and a reasonable amount of damages for a total of $1.5 million. *Id.* at p. 7.

## II.    **The *Spears* Hearing**

On November 28, 2016, a *Spears* Hearing was conducted. Cousin was sworn in and testified to the following:

He stated that on January 12, 2015 he was on his way to his house to pick up his stepdaughter when he saw a police cruiser approaching at a fast speed. However, a burgundy car was blocking the police cruiser's route. So, He proceeded to the next stop while the police cruiser followed without his lights on. His stepdaughter asked him why the police were following him. At that point, the police jumped out with their guns drawn and asked where the guns and drugs were. He stated that while the police said it was a traffic stop they never asked for either his license, insurance, or registration. The police then began to search him. As he turned his head, the police started to beat him and handcuffed him. Another police officer also started to beat him. Then, another car with other officers arrived, and those officers also began to beat him.

Cousin told them he had diabetes, high blood pressure, and a bad heart. When they heard he had a bad heart, they allegedly stopped. They then searched him in front of the cruiser; however, Cousin states that they found nothing. They then brought him to the back of the vehicle while he was bleeding. After they finished searching Cousin and the vehicle, they called an ambulance which brought Cousin to the hospital. While in the hospital, Cousin received a ticket for improper lane usage and running a stop sign. He believes they made up the improper lane usage, particularly because the police officers never asked for his license, etc.

His family came to the hospital, but the police refused to allow them to see him. Cousin's personal doctor also came and told the police that they could have killed him because of his high

3

blood pressure. At that point, the police allegedly came back in and were apologetic. His doctor checked on him and left.

The police officer then forced him to sign the ticket with Detective McNeese's number on the back. When the nurse came back in, she told Cousin that the officers asked to be informed when he was released. However, she released him and then waited thirty minutes to inform police. The officers then called Cousin about forty minutes later to check on him and told him they would be in contact.

Cousin noted that there was no black police officer on sight and that no black police officers worked the streets. He questioned what was really going on.

Two weeks later the officers contacted Cousin and demanded that he turned himself in. He then called his lawyer. After which, his lawyer called the officers and informed them that Cousin would turn himself in the next day.

Cousin was charged with being in possession of two ounces of cocaine, although he denies having had the drugs in his possession. Cousins did acknowledge that he had pled guilty to a possession of cocaine charge twelve years ago.

In court, Cousin states that he ultimately pled guilty to the cocaine charge as part of a plea agreement for fifteen years. He states that he felt that he was forced to enter the deal because he was facing sixty years and a multi-bill otherwise. He also states that he felt jammed on his court date in October of 2015 because the Judge forced him to either take the deal or proceed with trial that day. Cousin states that even though he tried to fire his lawyer the morning of trial, the Judge wanted to proceed forward.

Cousin also stated that he felt that the prosecutors decided to pursue jail time when they learned he was going to sue the police officers for the excessive force during his arrest. He stated

4

that he had told the head of the narcotics division about his intent to sue during the course of his conversation with him about possibly being a cooperating witness. Moreover, Cousin states that he had difficulty finding a lawyer to take his civil case because he could not find an attorney willing to sue the police officers or the parish.

Cousin stated that he sued the Parish because the Parish is responsible for the police officers. Similarly, he sued the Parish President because she is the responsible for the police. He also sued the Sheriff simply because he is in charge, although he acknowledges that he has no issues with the current Sheriff because he was not involved at the time. He also sued the State of Louisiana because of its supervisory role as well.

He stated that he sued Detective McNeese because he was one of the officers that arrested and beat him. He clarified that he was suing for excessive force rather than for the ticket. He also sued the unidentified officers for the excessive force as well.

Cousin alleged that he still has problems with this left arm, which was diagnosed as sprained. However, Cousin believes that he has a torn rotator cuff but acknowledged that he has not received that opinion from a doctor. He also stated that his right eye was an issue and now he has to wear glasses. Cousin finally noted that after he pled guilty, he was initially transferred to Hunt Correctional Center where they checked out his eye and his shoulder as well as his other medical issues.

III.    **Standard of Review**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2

F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiffs' claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**IV.    Improper Defendants**

**A.    St. Tammany Parish Government**

Cousin has named the St. Tammany Parish Government as a defendant in this case. To establish liability against a parish government under § 1983, the plaintiff must point to the Parish's policy or custom or breach of duty that caused the alleged constitutional deprivation.  *See Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690–91 (1978); *Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir. 1984). Cousin has not and cannot do so in this case where he complains of actions taken by sheriff department officers. *See Salvagio v. Doe*, No. 13–5182, 2013 WL 6623921, at *2 (E.D. La. Dec. 16, 2013) (Vance, J.) (citation and footnotes omitted) ("parish governments have no authority over parish sheriffs or their deputies, and cannot be held vicariously

liable for the acts of either, including plaintiff's arrest."); *see also  Burge v. Parish of St. Tammany,* 187 F.3d 452, 470 (5th Cir.1999) (citing *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669, 671 (La.1981)).

Without some legal responsibility in place, Cousin has not stated a basis for liability on the part of St. Tammany Parish arising from his arrest.  He has not pointed to any parish policy or custom related to the events within the prison for which it had no control and which would be required to support any claim of liability against the Parish itself under *Monell*.

Cousin's claims against the St. Tammany Parish Government must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

B. **State of Louisiana**

Cousin's claim against the State of Louisiana is barred by the Eleventh Amendment. The United States Fifth Circuit Court of Appeals has noted:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts.  When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.  See La.Rev.Stat.Ann. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

*Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted).

As such, Cousin's claim against the State of Louisiana claim should be dismissed with prejudice as frivolous for the reasons stated above.

### C.    Sheriff Randy Smith and Patricia Brister

Cousin has named as defendants, two supervisory officials, Sheriff Randy Smith ("Smith") and Patricia Brister ("Brister"), in her official capacity as President of St. Tammany Parish. However, Cousin does not assert any allegations or conduct of the defendants from which it can be concluded that the defendants are liable for any claims under § 1983.

Supervisory officials, like these defendants, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). A supervisory official may only be liable under § 1983 if he or she "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference as set forth above.

Cousin does not allege that either defendant was present for, or personally, involved in the use of excessive force. Although Cousin does allege personal injuries and mental anguish as a result of force used in connection with his arrest, he has not alleged that he suffered any injuries as a result of any directive, supervised training or activity, or other policy set forth by either defendant which would create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447,

8

459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-125 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Instead, Cousin appears to have named these officials simply because of their supervisory roles. Thus, his claim against Smith and Brister are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915 (e), § 1915A, and § 1997e.

## V.    **Prescribed Claims**

As to the claims against Detective McNeese and the other unidentified officers, Cousin alleges that the events forming the basis of his complaint occurred on or about January 12, 2015, the night he was allegedly beaten in connection with an arrest. The § 1983 claims he presents here have prescribed and can be dismissed for that reason.

Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)); *see also Spikes v. Williams*, No. 14-1895, 2015 WL 1906024, at *2-3 (E.D. La. Apr. 20, 2015) (order adopting report and recommendation). In Louisiana, personal injury claims are governed by La. Civ. Code art. 3492, which provides for a prescriptive period of one year from the date of injury or damage. See *Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action, similar to a Louisiana tort claim, accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Wallace*, 549 U.S. at 388; *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The Supreme Court has held that the limitations

period begins to run at the point when "the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations omitted).

Thus, for purposes of this lawsuit, Cousin would have had one year from the date of his injury or damage to bring his § 1983 claims against the defendants. Cousin knew of his injury or damage in January of 2015. Therefore, Cousin had to have brought his claim by January of 2016.

The Clerk of this Court filed Cousin's complaint on October 12, 2016 and pauper status was granted on November 8, 2016. R. Doc. 1; R. Doc. 9. In the prisoner context, however, the date prison officials receive the complaint from the prisoner for mailing to the court is the time of filing for limitations purposes. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Cousin dated his signature on the complaint on October 4, 2016, which is the earliest date appearing in the record on which he could have given the pleadings to prison officials for mailing to this Court. Therefore, Cousin's complaint is deemed filed on October 4, 2016, was filed nearly nine months after the limitations period expired in January of 2016.

"In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law." *Spikes*, 2015 WL 1906024 at *3. As the Court in *Spikes* explains:

> The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run: (1) if there was some legal cause that prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected proceeding that prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action, and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Thus, the doctrine of contra non valentem recognizes that in limited

10

circumstances prescription should not run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible.

*Id.* (internal quotations and citations omitted).

The Court does not see nor has Cousin identified any reason that the prescriptive period should be tolled. There is no legal cause that prevented the courts from taking cognizance of or acting on Cousin's action; there is no condition coupled with the connected proceeding that prevented plaintiff from acting in a timely manner; defendants did nothing to prevent Cousin from availing himself of his cause of action; and the cause of action was known or reasonably knowable to Cousin. For this reason, his complaint should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e.

## VI.    <u>Negligence</u>

Cousin has also asserted claims of professional and general negligence. R. Doc. 1, p. 6. However, it is well settled, however, that "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of [state] tort law." *Baker v. McCollan,* 443 U.S. 137, 146 (1979). Thus, the Supreme Court has long held that § 1983 liability must be predicated on more than mere negligence which is not protected under due process considerations. *See Davidson v. Cannon,* 474 U.S. 344, 347 (1986). In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a § 1983 claim. *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir.1993) (negligent medical care); *Hare v. City of Corinth,* 74 F.3d 633, 641–42, 646 (5th Cir.1996) (negligence insufficient to support failure to protect claim under § 1983); *Eason v. Thaler,* 73 F.3d 1322, 1328–29 (5th Cir.1996) (negligence cannot support § 1983 action for deprivation of religious rights or for an Eighth Amendment claim

based upon prison officials' alleged gross negligence in permitting a gas leak to occur); *Doe v. Taylor Indep. Sch. Dist.,* 975 F.2d 137, 142 (5th Cir.1992), *vacated on other grounds,* 15 F.3d 443 (5th Cir.1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

As such, to the extent that Cousin has attempt to assert claims for negligence under § 1983, those claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted.

## VII.    State Law Claims

Finally, to the extent Cousin intended to invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367, his state law claims should be dismissed. The general rule in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.,* 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims").

The Court recommends that Cousin's federal claims under § 1983 be dismissed in their entirety. Therefore, his state law claims should be dismissed without prejudice as the Court declines to exercise its supplemental jurisdiction.

## VIII.    Recommendation

**IT IS RECOMMENDED** that Edward Cousin, Jr.'s claims against the defendant, the St. Tammany Parish Government, Louisiana State, Patricia Brister in her official capacity as President

12

of St. Tammany Parish, Sheriff Randy Smith, Detective David McNeese, and six unidentified officers of the St. Tammany Parish Sheriff's Office, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that Cousin's state law claims be **DISMISSED WITHOUT PREJUDICE** because this Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 10th day of March, 2017.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.